UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-60762-CV-DIMITROULEAS/ROSENBAUM

KAREN TARTE,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.
_____/

**ORDER**

This matter came before the Court upon the *ore tenus* emergency motion of the United States of America to preclude Plaintiff Karen Tarte's attorney or any other representatives or agents of Plaintiff from attending Plaintiff's Rule 35, Fed. R. Civ. P., medical examinations and to require Plaintiff to submit to x-rays, magnetic resonance imaging, and the taking of a medical history deemed by the government's examining physicians to be necessary to conduct a meaningful Rule 35 examination of Plaintiff. The Court held a hearing on February 12, 2008, and heard argument of Plaintiff and Defendant. At the conclusion of the hearing, the Court ruled from the bench. This Order memorializes that ruling.

*I. BACKGROUND*

In this case, Plaintiff alleges that a United States Postal Service ("USPS") employee acting within the scope of her employment improperly backed her USPS van over Plaintiff. D.E. 1, ¶¶10-12. As a result, Plaintiff suffered, among other alleged damages, fractures of the left tibia and fibula, cervical sprain and strain, and other injuries requiring surgical intervention and medical care and

treatment. *Id.* at ¶16; D.E. 1, Ex. A. Accordingly, Plaintiff sues the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, and under the Postal Reorganization Act, 39 U.S.C. §§ 401, *et seq*.

During the course of discovery, the United States scheduled Rule 35, Fed. R. Civ. P., examinations for Plaintiff with Dr. Grossman, an orthopedic surgeon, and Dr. Pasarin, a neurological surgeon. After setting the examinations, Defendant sent a letter to Plaintiff's counsel indicating that she had advised the examining physicians that no one other than Plaintiff and the doctors' necessary staff would be present for the examinations.

On the day that Dr. Grossman conducted his examination of Plaintiff, however, she arrived accompanied by her attorney, who indicated that he would be staying during the examination. Dr. Grossman contacted counsel for Defendant, who acquiesced, on the basis that Plaintiff's attorney would not interfere with the examination. According to Defendant, however, Plaintiff and her counsel refused to allow Dr. Grossman to conduct x-rays, MRI's, and a medical history, which Dr. Grossman believed to be necessary in order to determine the extent of Plaintiff's injuries and condition.

Plaintiff's counsel stated at the February 12th hearing that he did not view the x-rays and MRI's as necessary, as Plaintiff had had x-rays performed at the direction of her own physician in November, 2007, and he had brought those x-rays with him to the examination. He further explained that he thought that Plaintiff had already been exposed to enough radiation through her own medical examinations. Additionally, Plaintiff's counsel said that Dr. Grossman did not know that Plaintiff's counsel brought such x-rays to the examination because Plaintiff's counsel did not wish to violate his agreement with the United States, so he did not mention the x-rays, although he set the large

-2-

envelope containing them on the counter in the examination room. Dr. Grossman advised the United States that he was unable to conduct an effective examination without being permitted to perform the tests he deemed necessary.

Following Dr. Grossman's examination, Plaintiff's counsel indicated his intention to the United States to attend the Rule 35 examination scheduled to be conducted by Dr. Pasarin on February 13th, and further, to decline to allow Plaintiff to submit to x-rays, MRI's, and other procedures, including censoring medical history questions that the doctor might ask. In light of Plaintiff's counsel's expression of these intentions, Defendant requested an emergency hearing so that it could seek an order from the Court precluding Plaintiff's counsel from attending the Rule 35 examinations and requiring Plaintiff to submit to medical testing deemed necessary by Defendant's experts. As noted previously, the Court held a hearing on February 12th to resolve the matter.

## II. ANALYSIS

Rule 35, Fed. R. Civ. P., is silent on who may attend a "physical or mental" examination. Consequently, the issue is left to the Court's discretion. *Wheat v. Biesecker*, 125 F.R.D. 479, 480 (N.D. Ind. 1989) (citing *Dziwanoski v. Ocean Carriers Corp.*, 26 F.R.D. 595 (D. Md. 1960)).

Plaintiff urges the Court to consider state case law regarding whether a Plaintiff may have her attorney attend a medical examination scheduled by the opposing party. In support of this position, Plaintiff relies upon *Gensbauer v. May Dept. Stores Co.*, 184 F.R.D. 552 (E.D. Pa. 1999). In *Gensbauer*, although the court noted that rulings from other judges in the district had held that parties have no right to have counsel or other observers present during an examination, the court decided to rely on the Pennsylvania state rule permitting attorneys to be present at examinations. *Id.* at 553. In support of this conclusion, the court stated that the case involved was a diversity case, and

the federal rule was silent on the issue. *Id.* Consequently, the court deemed it appropriate to consider state law on the subject.

The undersigned expresses no opinion on the advisability of *Gensbauer*'s holding. *Gensbauer* was a diversity case. Accordingly, the *Gensbauer* plaintiff's cause of action arose purely under state law, and her case could have proceeded in state court. This case, unlike *Gensbauer*, is not a diversity case. As a result, Plaintiff can proceed with her claims *only* in federal court, as her causes of action arise under federal statutes that allow only for federal jurisdiction. Indeed, because she has sued the sovereign, her case can proceed only because the federal defendant has authorized the lawsuit (through the FTCA and PRA). Thus, although Rule 35 itself does not expressly address the issue of whether an observer may attend a medical examination with a plaintiff at the plaintiff's request, the Court chooses to rely upon the federal cases that determine this issue under Rule 35, Fed. R. Civ. P., without looking to the applicable states' rules of procedure regarding attendance of observers at medical examinations.

Although some federal courts have permitted observers or recordings of Rule 35 examination, federal courts have found that the party seeking to have the observer present bears the burden of demonstrating "good cause" for the request under Rule 26(b), Fed. R. Civ. P., as the presence of a third party is not typically necessary or proper. *Schlunt v. Verizon Directories Sales-West, Inc.*, 2006 WL 1643727, *4 (M.D. Fla. June 12, 2006) (citing *Wheat*, 125 F.R.D. at 480). Indeed, courts have held that the presence of a third party or recording device, which is analyzed in the same way that the presence of an observer is considered, "subvert[s] the purpose of Rule 35, which is to put both the plaintiff and defendant on an equal footing with regard to evaluating the plaintiff's [medical] status." *Favale*, 235 F.R.D. at 557 (citing *Duncan v. Upjohn Co.*, 155 F.R.D.

23, 26-27 (D. Conn. 1994)); *see also Abdulwali v. Washington Metro Area Transit Authority*, 193 F.R.D. 10, 13 (D.D.C. 2000). Because Plaintiff was able to be examined by her physicians in the absence of Defense counsel, the theory urges, Plaintiff should not be permitted to record the Rule 35 examination unless she can show "special conditions are present which call for a protective order tailored to the specific problems presented." *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 324 (N.D. Ga. 2000) (quoting *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y. 1994)); *see also Ali v. Wang Labs., Inc.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995) (requiring demonstration of "special need"); *Abdulwali*, 193 F.R.D. at 13 (finding that "[i]n the instances in which the presence of a third party has been allowed, '[e]ach of these rulings has been grounded in the particular facts of the case.'").

In further support of this rule, courts have noted that Rule 35 and the adversary process provide other safeguards for plaintiffs who submit to Rule 35 examinations. Plaintiffs receive a Rule 35 examination report and then have the opportunity to depose the physician, cross-examine him or her, and introduce contrary expert evidence. *See Barrett v. Great Hawaiian Cruises, Inc.*, 1997 WL 862762 (D. Ha. 1997). Additionally, should the physicians improperly inquire, plaintiffs have the opportunity to seek to exclude such questioning from trial. *See Cline v. Firestone Tire & Rubber Co.*, 118 F.R.D. 588 (S.D. W.Va. 1988) (citing *Dziwanoski*).

In this case, Plaintiff has not satisfied her burden to establish "good cause" for the presence of an observer, including her attorney. While the Court appreciates Plaintiff's argument of the issue and is aware of Plaintiff's generally voiced concerns about the potential bias of a physician selected by any defendant conducting an examination of a plaintiff, Plaintiff has not come forward with any evidence suggesting that the physicians selected by Defendant in this case will not "'make a fair examination.'" *See Wheat*, 125 F.R.D. at 480 (quoting *Dziwanoski*, 26 F.R.D. at 598). Under these

circumstances, the Court does not find good cause or special circumstances to warrant upsetting the "level playing field" intended to be established by Rule 35. Consequently, Defendant's *Ore Tenus* Motion to preclude Plaintiff from taking observers, including her attorney, to the Rule 35 examinations is hereby **GRANTED.**

B.      Procedures That May Be Conducted During the Rule 35 Examinations

In this case, the United States seeks for Dr. Grossman, an orthopedic surgeon, and Dr. Pasarin, a neurological surgeon, to be able to administer x-rays and MRI's, and to take a medical history, to assess the extent of Plaintiff's damages. The Court first notes that this matter does not arise in the context of a Plaintiff-contested motion by Defendant for Rule 35 examinations. Plaintiff has already voluntarily consented to Rule 35 examinations by an orthopedic surgeon and a neurological surgeon, implicitly conceding that good cause under Rule 35, Fed. R. Civ. P., for such examinations exists. The Court agrees, in light of the nature of injuries and the extent of damages sought which remain at issue in this case.

Thus, only issues for the Court to determine are whether x-rays, MRI's, and a medical history fall within the permissible scope of such examinations. During Rule 35, Fed. R. Civ. P., examinations, courts often allow "routine procedures." *Trenary v. Busch Entertainment Corp.*, 2006 WL 3333621, *4 (M.D.Fla. 2006) (ordering examinations to proceed according to "routine procedures"); *Morton v. Haskell Company*, 1995 WL 819182, *4 (M.D. Fla., Sept. 12, 1995) (same). Many courts have found, for example, that a review of medical history assists the doctor in his or her evaluation. *See, e.g., Romano v. II Morrow, Inc.*, 173 F.R.D. 271, 273 (D. Ore. 1997) (holding that review of medical history during an examination assisted doctor's medical conclusions); *Hernstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 626 (D. Kan. 1999) (holding restriction of

questions during examination "unduly restricts physician's ability to reach medical conclusions").[1] Accordingly, courts refrain from "limit[ing] the manner in which an examination is conducted or the questions asked absent good cause for a protective order." *Henry v. City of Tallahassee*, 2000 WL 33310900, *2 (N.D. Fla., Dec. 6, 2000).

Plaintiff has not argued that x-rays, MRI's, and medical histories do not fall within the ambit of routine procedures that would be expected at medical examinations by an orthopedic surgeon or a neurological surgeon. Thus, the general propriety of engaging in these procedures during such examinations is not at issue. Rather, plaintiff contends that she has had enough x-rays taken, and she does not wish to be exposed to additional radiation through more x-rays and MRI's.[2]

While the Court can appreciate Plaintiff's concern, Plaintiff relies on the very injuries sought to be x-rayed by Defendants for the damages for which she pleads. Defendant must be provided with an adequate opportunity to test Plaintiff's claims of injury and damages. It is difficult to imagine how an orthopedic surgeon or a neurological surgeon could assess the existence and extent of any permanent damage to Plaintiff's bones without the aid of x-rays and/or MRI's. Under these circumstances, the Court declines to preclude Drs. Grossman and Pasarin from conducting x-rays and MRI's that are reasonably necessary for them to assess the extent of Plaintiff's injuries. Because the examinations, however, are scheduled in close proximity in time to each other, the Court orders

---

[1] While the risk of an expert report opining about the credibility of party from an examination, such as inconsistencies in the party's recitation of medical history, is legitimate, should that occur, Plaintiff may file an appropriate motion with the Court, seeking to preclude Defendant's use at trial of any inappropriate portions of the physicians' opinions and/or factual findings. *See, e.g., Gray v. State of Florida*, 2007 WL 2225815, *3 (MD. Fla., July 31, 2007).

[2] The government represented that the MRI's involved are non-invasive in that they do not require injections or other procedures that would break the skin.

Defendant to coordinate the efforts of Drs. Grossman and Pasarin with respect to taking x-rays and MRI's of Plaintiff, so that they can minimize the number of such images that must be made.

As for the medical history, Plaintiff has not set forth any reason why the doctors should not be permitted to take Plaintiff's medical history, other than a general concern that the doctors may use the opportunity to conduct a quasi-deposition. Defendant has submitted no real evidence supporting this supposition. In the absence of any such evidence, the Court will not limit the doctors' abilities to conduct what is generally deemed to be a routine procedure necessary to help the physicians reach their medical conclusions, particularly in view of Plaintiff's ability to contest the admissibility of any of Plaintiff's statements elicited by the physicians during the taking of the medical history.

### III.  CONCLUSION

For the foregoing reasons, Defendant's *ore tenus* emergency motion to preclude Plaintiff's attorney or any other representatives or agents of Plaintiff from attending Plaintiff's Rule 35, Fed. R. Civ. P., medical examinations and to require Plaintiff to submit to x-rays, magnetic resonance imaging, and the taking of a medical history deemed by the government's examining physicians to be necessary to conduct a meaningful Rule 35 examination of Plaintiff, is **GRANTED**.

1. Plaintiff shall attend her Rule 35 examinations unaccompanied by her counsel or any other observers. Additionally, Plaintiff shall submit to x-rays and MRI's that are reasonably necessary for the examining physicians to assess the extent of Plaintiff's injuries.

  2.  Defendant shall coordinate the efforts of Drs. Grossman and Pasarin to minimize the number of x-rays and MRI's that they must take of Plaintiff.

**ORDERED AND DONE** this 15th day of February, 2008.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc: Hon. William P. Dimitrouleas
   Counsel of Record